**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Respondent. | Misc. Case No. 26-322<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

**NEURAL AI'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY META PLATFORMS, INC.**

# TABLE OF CONTENTS


I. FACTUAL BACKGROUND ........................................................................................ 2

A. The Underlying Litigation ........................................................................ 2

B. The Rule 45 Subpoena to Meta and Meta's Initial Objections .............................. 3

C. NAI's Meet-and-Confer Efforts and Meta's Continued Non-Compliance............. 4

II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER. ........................................................................................ 5

III. META MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. ........ 5

A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims......... 6

B. Meta Has Not Substantiated Burden and NAI Offered Narrower Alternatives...... 9

IV. CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
2024 WL 1977160 (W.D. Tex. April 30, 2024) ....................6, 9

*Camoco, LLC v. Leyva*,
333 F.R.D. 603 (W.D. Tex. 2019) ....................6

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
2025 WL 2821238 (D.R.I. Oct. 3, 2025) ....................5

*FG SRC LLC v. Xilinx, Inc.*,
2022 WL 22997130 (D. Del. Apr. 11, 2022) ....................8

*Flores v. Lowes Home Centers, L.L.C.*,
2023 WL 3959399 (W.D. Tex. June 12, 2023) ....................6

*Kim v. NuVasive, Inc.*,
2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ....................8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................8

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
2024 WL 221448 (W.D. Tex. Jan. 18, 2024) ....................5

*Neural AI, LLC v. NVIDIA Corp.*,
Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) ....................1, 4

*Phila. Indem. Ins. Co. v. Odessa Family YMCA*,
2020 WL 6484069 (W.D. Tex. June 26, 2020) ....................5

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
2014 WL 12792496 (D. Mass. Sept. 8, 2014) ....................5

*Velocity Pat. LLC v. FCA US LLC*,
2017 WL 11893112 (N.D. Ill. Nov. 2, 2017) ....................5

*Waller v. Jet Specialty, Inc.*,
2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ....................6

**Rules**

Fed. R. Civ. P. 26 ....................5

Fed. R. Civ. P. 26(b)(1)....................................................................................................6

Fed. R. Civ. P. 45 .........................................................................................................1, 3, 6

Fed. R. Civ. P. 45(c)(2)(A) ...............................................................................................5

Fed. R. Civ. P. 45(d)(2)(B)(i) .........................................................................................5, 6

This motion arises from *Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) (the "Underlying Action"), a patent-infringement action pending in this District. In the Underlying Action, Neural AI, LLC ("NAI") alleges that NVIDIA Corporation ("NVIDIA") infringes through its GPU-accelerated hardware and software: U.S. Patent No. 8,648,867 (the "'867 Patent"), Reissue Patent No. RE48,438 (the "'438 Patent"), and Reissue Patent No. RE49,461 (the "'461 Patent") (collectively, the "Asserted Patents"). *See* Exhibits 1–4.

NVIDIA has made customer deployment central to the Underlying Action. It disputes whether customers configure and use the accused products as NAI alleges and contends that NAI must obtain customer evidence to prove indirect infringement and its extent. *See* Exhibit 8 ¶¶ 18, 20–23; Laiche Decl. ¶¶ 24–25. Respondent Meta Platforms, Inc. ("Meta") is one of NVIDIA's largest customers and end users. Its records and testimony therefore contain the real-world evidence NVIDIA says NAI must obtain.

NAI served Meta on June 25, 2026, with Rule 45 subpoenas for targeted documents and corporate testimony concerning Meta's configuration, integration, and use of NVIDIA GPUs and software. *See* Exhibits 14–17. Meta objected to every request and deposition topic and refused to produce documents or designate a witness.

The parties met and conferred beginning July 17, and NAI explained the targeted discovery, supplied focused technical questions and a draft declaration on August 4, and invited Meta to propose revisions or provide equivalent information in lieu of broader discovery. *See* Exhibits 11–13. After further conferences, Meta said it was considering a declaration but never sent proposed edits or made any concrete commitment. NAI advised Meta on August 11 that NVIDIA had extended the deadline for third-party discovery motions to August 18 and asked for edits promptly. But Meta has provided no edits and made no commitments. *See* Exhibit 21; Laiche Decl. ¶¶ 6.

To date, Meta has provided no documents, no witness, no declaration, and no timetable for compliance. NAI asks this Court to compel production responsive to Requests 1–12 on a rolling basis and testimony on Deposition Topics 1–5.

# I. FACTUAL BACKGROUND

## A. The Underlying Litigation

The Underlying Action involves direct, indirect, and induced infringement claims concerning claims 16–19 of the ’867 Patent; claims 1, 3–6, 8–9, 12, 14, 17–18, 21–23, 29–30, 32, 40, 43–44, 46, 48, 51–52, and 55–57 of the ’438 Patent; and claims 21–25 and 27–30 of the ’461 Patent (collectively, the “Asserted Claims”). *See* Exhibits 1 and 7. The Asserted Patents teach GPU-accelerated computing systems and methods. *See* Exhibits 2–4.

NAI’s January 20, 2026 Final Infringement Contentions identify integrated combinations of NVIDIA hardware—including GPUs, supercomputers and servers—and GPU-accelerated software, including CUDA, cuDNN, TensorRT, and higher-level frameworks, as the Accused Products. *See* Exhibit 7 at 2–9. NAI alleges NVIDIA encourages customers to combine, configure, and use those products in an infringing manner. *See id.* at 12–13.

NVIDIA disputes that selling the Accused Products proves customers configure and deploy them as NAI alleges. Although NVIDIA admits it sells the products, partners with resellers, managed-service providers, and data-center providers, and supports customers and partners, it denies infringement and disclaims knowledge of customer use. *See* Exhibit 8 ¶¶ 18, 20–23, 87, 131, 171. NVIDIA has stated throughout discovery that NAI must seek evidence of actual deployment from customers and end users. Laiche Decl. ¶ 24–25. Customer evidence is therefore directly relevant to NAI’s infringement claims.

Meta is one of NVIDIA’s largest and most significant customers, partners, and end users.

NVIDIA and Meta announced a "multiyear, multigenerational strategic partnership" in February 2026 covering on-premises, cloud, and AI infrastructure. *See* Exhibit 14 at 1; Exhibit 15. The partnership contemplates millions of NVIDIA Blackwell and Rubin GPUs, NVIDIA GB300-based systems, and NVIDIA Grace CPUs. *Id.* Meta's use of NVIDIA technology is longstanding: in January 2022, it built the AI Research SuperCluster with 760 NVIDIA DGX A100 systems and 6,080 A100 GPUs. *See* Exhibit 16 at 1–2. Meta is therefore a real-world integrator, user, and deployer of the Accused Products. Its records concerning their configuration, integration, deployment, and use bear directly on whether the products are used in an infringing manner and whether NVIDIA induced or contributed to that use.

**B. The Rule 45 Subpoena to Meta and Meta's Initial Objections**

NAI served Meta on June 25, 2026, with Rule 45 subpoenas for documents and corporate testimony, designating Austin, Texas, as the place of compliance. *See* Exhibits 5–6. The document subpoena contains twelve targeted requests and the accompanying deposition subpoena contains five topics, all directed to Meta's configuration, integration, and use of NVIDIA GPUs and related software. *See* Exhibit 5. Both subpoenas are limited to September 13, 2018 to the present and to U.S.-based activity or activity supporting or directed toward U.S. operations. *Id.* at 15.

Meta's responses were due July 9, 2026. At Meta's request, NAI extended the deadline to July 16. *See* Exhibit 10 at 2. On July 16, Meta objected to every request and topic on grounds including undue burden, overbreadth, vagueness, lack of proportionality, confidentiality, improper place of compliance, and that the information should be sought from NVIDIA. *See* Exhibit 9. Meta refused to produce any documents or designate a witness. *Id.* NAI has thus received no discovery concerning Meta's real-world configuration and use of the Accused Products, which is the evidence NVIDIA says NAI must obtain to prove indirect infringement and damages. Laiche Decl ¶ 26.

### C. NAI's Meet-and-Confer Efforts and Meta's Continued Non-Compliance

NAI asked to meet and confer on July 17, 2026, the day after Meta served its objections. At the first conference on or about July 21, NAI explained the targeted discovery and identified the Meta systems, NVIDIA products, and categories of information at issue. *See* Exhibit 11 at 4–9. Meta said it was still investigating and needed to consult technical personnel. *Id.* NAI sent a draft declaration on July 28 as a narrower alternative. *Id.* at 5. On July 29, Meta said it was still investigating and would be in touch. *Id.* NAI followed up on August 2. *Id.* at 3.

On August 4, Meta said it is "a large company and we are still investigating," and that it will "be in touch with more information at the end of the week." *Id*. at 3–4. That same day, NAI sent focused technical questions and recirculated the draft declaration, offering an executed declaration in lieu of document production and deposition testimony, subject to resolving material gaps. *See* Exhibits 11–13. On August 6, Meta acknowledged that it was not opposed to a declaration and that its contents would depend on the facts concerning Meta's use of NVIDIA software. Exhibit 21 at 4–5. The parties conferred again on August 7 without progress. *Id*. On August 10, Meta sent questions about the draft declaration, including questions about GPU architectures and whether PyTorch and Triton are NVIDIA offerings. *Id* at 3. NAI answered those questions on August 11. *Id*.

As of the date of this filing, Meta has not identified the requests it will answer, agreed to produce documents, answered NAI's technical questions, proposed declaration revisions, designated a witness, or committed to any compliance date. Document discovery in the Underlying Action closed August 11, 2026, deposition discovery closes September 16, 2026, and NVIDIA agreed to extend NAI's deadline to file third-party discovery motions related to documents through August 18, 2026. *See Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-

00221-LS-DTG, Dkt. 181 (W.D. Tex.); Laiche Decl. ¶ 27. NAI cannot allow an open-ended investigation to consume the remaining discovery period. It seeks court intervention while remaining willing to consider prompt and complete discovery that resolves the dispute.

## II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER.

Rule 45(d)(2)(B)(i) directs a party seeking to compel compliance to apply to "the court for the district where compliance is required." *See* Fed. R. Civ. P. 45(d)(2)(B)(i); *Meritage Homes, LLC v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024); *Phila. Indem. Ins. Co. v. Odessa Family YMCA*, 2020 WL 6484069, at *1 (W.D. Tex. June 26, 2020). Rule 45(c)(2)(A) permits document production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The issuing party need not select a place within 100 miles of the recipient's headquarters. *See, e.g., Conservation L. Found., Inc. v. Equilon Enters. LLC*, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014); *Velocity Pat. LLC v. FCA US LLC*, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017).

Austin satisfies the Rule 45. Meta has maintained office space at 300 West 6th Street since at least 2016, invested millions in its Austin presence—including a $2.9 million renovation announced in March 2025—and maintains employees and substantial infrastructure there. *See* Exhibits 18–20. Meta's Austin careers page lists 69 open positions, and its registered agent is located in Austin. *See* Exhibits 6, 18. Because the designated place of compliance is proper, this Court has jurisdiction to resolve the Motion.

## III. META MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the

needs of the case. Fed. R. Civ. P. 26(b)(1). "At the discovery stage, relevancy is broadly construed." *Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399, at *2 (W.D. Tex. June 12, 2023). "'[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Id.* (quoting *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019)).

Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i). Once a party moving to compel discovery establishes that the materials are relevant, "[t]he party opposing discovery bears the burden of stating 'with specificity the grounds for objecting to the request.'" *Waller v. Jet Specialty, Inc.,* 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024); *see also 611 Carpenter LLC v. Atlantic Casualty Ins. Co*., 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *611 Carpenter*, 2024 WL 1977160, at *1.

### A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims.

NVIDIA has made customer deployment—not merely product capability—a disputed issue. It contends that selling the Accused Products does not prove customers configure and use them as NAI alleges and says NAI must obtain customer evidence to prove infringement and its extent. *See* Exhibit 8 ¶¶ 18, 20–23; Laiche Decl. ¶¶ 24–25. Meta is a major customer and end user. It has publicly described a strategic partnership with NVIDIA involving millions of GPUs and operates NVIDIA systems at substantial scale. *See* Exhibits 14–16. Meta's records and testimony can show whether

and how often the asserted methods are actually performed in a real-world system.

The requested information is also uniquely within Meta's possession. NVIDIA may know what it designed and distributed, but, according to NVIDIA, only Meta knows what it selected, configured, deployed, and ran. Laiche Decl. ¶¶ 24–25. NVIDIA does not possess Meta's internal architecture diagrams, environment configurations, production software settings, profiler traces, or memory-allocation records, and it has repeatedly disclaimed meaningful insight into customer deployments. *Id*. NAI sought the information from Meta because NVIDIA told NAI that customer and end-user discovery was necessary. *Id.* NAI cannot obtain equivalent evidence from NVIDIA.

**The twelve document requests** seek discovery tied to the Asserted Claims in the Underlying Action, and track the accused computation from software selection through input, execution, memory, and output to establish infringement. *See* Exhibit 5.

- **Requests 1–4** seek documents sufficient to identify the software, frameworks, libraries, APIs, scripts, configurations, and custom code Meta uses on NVIDIA GPUs; the NVIDIA software and sample code it uses; and how Meta calls, interfaces with, wraps, depends on, modifies, or extends that functionality. They show which Accused Products Meta deployed and whether Meta used them as provided and intended or materially modified them.

- **Requests 5–6** seek architecture, design, data-flow, control-flow, and execution-flow materials and documents showing whether the relevant computations involve neural networks, layers, and outputs used as inputs to later neurons or layers. They show whether Meta's systems perform the claimed GPU-accelerated operations and how the Accused Products work together as relevant to the Asserted Claims.

- **Requests 7–10** address the claimed memory and data paths: pointer, buffer, and intermediate-result reuse; GPU-memory allocation or partitioning; movement of inputs from CPU, host, storage, sensor, or network sources into GPU memory; and storage, transfer, accumulation, reuse, or return of outputs and intermediate results. They target the memory-management and data-transfer limitations at the heart of the Asserted Claims.

- **Requests 11–12** seek documents sufficient to show how GPU computations are scheduled, ordered, queued, synchronized, parallelized, launched, and executed, and how inputs, commands, model or parameter changes, interruptions, or output changes affect GPU-queue placement. They target the claimed coordination and control of GPU computations.

These requests target whether Meta's systems perform the asserted method steps and whether NVIDIA's software, instructions, and support cause or encourage that use. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22, 1333-34 (Fed. Cir. 2009) (stating patentee must show all steps of claimed method were performed to prove indirect infringement and that damages "ought to be correlated, in some respect, to the extent the infringing method is used by" directly infringing third parties); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *5 (D. Del. Apr. 11, 2022) ("[I]t is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3 (S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom.").

The requests are also bounded and particular. Each seeks only documents "sufficient to show" an identified technical fact. *See* Exhibit 5. The Subpoena is limited to September 13, 2018 to the present and to U.S.-based or U.S.-directed activity. *Id.* at 12. I

**The five deposition topics** seek testimony on the same subjects as the document requests and direct Meta to designate one or more knowledgeable persons on just five topics. *See* Exhibit 5.

- **Topic 1**: the NVIDIA software and libraries Meta uses to perform computations on NVIDIA GPUs;
- **Topic 2**: NVIDIA sample source code Meta uses, in whole or in part;
- **Topic 3**: Meta's customizations and data inputs that alter how NVIDIA software performs computations;
- **Topic 4**: identification of Meta software that uses NVIDIA GPUs to perform computations; and
- **Topic 5**: how output and intermediate GPU results are stored, referenced by pointers, transferred, copied, streamed, written back, returned, accumulated, reused, or otherwise made available between GPU memory and CPU, host, system, storage, display, network, or other memory locations.

The testimony is proportional because it is limited to five topics tracking the twelve requests, the same defined period, and the same U.S. nexus.

NAI also offered the draft declaration as a less burdensome alternative and said it would consider an executed declaration in lieu of document production and testimony, subject to resolving material gaps. *See* Exhibits 11–13. Meta has not accepted that off-ramp or provided equivalent discovery.

The information is central to the issues in dispute, uniquely within Meta's possession, and sought through targeted, time-limited requests and topics. Meta should be compelled to produce it.

### B. Meta Has Not Substantiated Burden and NAI Offered Narrower Alternatives.

Meta's written objections do not state with specificity the burden associated with any request or topic. *See 611 Carpenter LLC*, 2024 WL 1977160, at *1. Meta repeated the same boilerplate objections across all twelve requests and five topics and then refused to produce documents or designate a witness. For each document request, Meta stated on that it was "willing to confer with Plaintiff regarding whether there is a narrower category of information, if any, that is properly discoverable from Meta as a non-party and not more readily obtainable from NVIDIA or other sources." *See* Exhibit 9 at 13–33. A similar boilerplate response was used for all deposition topics. *See id.* at 33–42. Boilerplate objections unsupported by evidence of burden do not establish undue burden or outweigh the relevance of the discovery sought.

Meta's objection to the definition of "NVIDIA GPUs" likewise does not show burden. The definition tracks the Accused Products identified in NAI's infringement contentions (Exhibit 7 at 2–9), and the requests seek documents "sufficient to show" facts about products Meta actually deploys. *See* Exhibits 5, 7, 9. That formulation does not require Meta to identify every GPU it has ever used or produce a wholesale source-code collection.

NAI minimized burden at every step. It pursued the information from NVIDIA before subpoenaing Meta, agreed to extend Meta's response deadline, identified implicated products and systems, supplied focused technical questions, provided a draft declaration as an alternative to document production and testimony, and invited Meta to identify specific burdens. *See* Exhibits 10–13. Meta has not paired its objections with a defined search, a concrete production date, proposed declaration revisions, or a witness. Laiche Decl. ¶ 26. NAI should not be required to accept an open-ended investigation in place of the discovery NVIDIA says it needs from its customers and end users.

Meta is a Fortune 50 company with dedicated litigation counsel and extensive document-management infrastructure. The limited, targeted production NAI seeks does not impose undue burden, particularly where NAI has offered a streamlined declaration alternative.

## IV. CONCLUSION

For the foregoing reasons, NAI respectfully requests that this Court (1) compel Meta to produce nonprivileged documents responsive to Requests for Production Nos. 1–12 on a rolling basis beginning within 7 days of the Court's order and to complete production by September 7, 2026, and (2) compel Meta to designate and produce a knowledgeable witness on Deposition Topics 1–5 on or before September 16, 2026.

Dated: August 18, 2026

Respectfully submitted,

*/s/ Rocco Magni*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on August 18, 2026, a true and correct copy of the foregoing document was served on counsel for Meta Platforms, Inc. and all counsel of record in the underlying action.

*/s/ Rocco Magni*
Rocco Magni

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Neural AI, LLC conferred in good faith with counsel for non-party Meta Platforms, Inc. regarding the issues raised in this Motion, including through Zoom conferences on or about July 21, August 7, and August 10, 2026, and related email correspondence. Despite those efforts, the parties were unable to resolve the dispute.

*/s/ Rocco Magni*
Rocco Magni